FLANIGEN *v.* The WASHINGTON INSURANCE· COMPANY.

The breach of a municipal regulation, to which a pecuniary penalty is attached, payable by the master or owner, does not avoid a policy of insurance; hence

A policy of insurance on an outward-bound vessel is not avoided by reason of not having on board a pilot, though a loss occurred on pilot ground in the bay, and at the time of the voyage there was an establishment of pilots at the port of departure, and the act of 1803 required such a vessel to take a licensed pilot, or forfeit a sum equal to half pilotage.

Nor did the act of 1803, and the subsequent legislation on the subject, intend to create a statutory seaworthiness.   But whether a vessel without a pilot is seaworthy, depends on the usage of the port, the competency of the master, &c.

State laws and regulations, which are by implication incorporated into a public act of Congress, will be judicially recognised, and need not be pleaded or proved;

Hence a plea, that a vessel had not on board a pilot, licensed by the State of Pennsylvania, when a loss occurred in the Delaware, is bad in form, for not also averring there was no pilot on board licensed by the states of New Jersey or Delaware; the laws and usages of which states are impliedly incorporated into the act of Congress of 1837.

IN error from the District Court of Philadelphia.

*Jan.* 18—24.   This was an action on a time policy, in which the plaintiff declared for the loss of the brig Warren in the Delaware Bay, by storms and ice, on her voyage from Philadelphia to Wilmington, N. C.

The defendant pleaded, " *That the said vessel in the said declaration mentioned, was of the burden of seventy-five tons, or more, and set sail and departed on the said voyage in the said declaration mentioned, without having, in accordance with the act of Assembly, in such case made and provided, received a pilot on board, to conduct her to the capes of the Delaware.*"

On general demurrer, judgment was given for defendants.   The

defendant had also pleaded unseaworthiness at the commencement of the voyage; that it is the custom and usage of the port of Philadelphia, and was so at the time when, &c., to take on board of every vessel of not less than seventy-five tons, sailing from Philadelphia to any port not within the capes of the Delaware, a pilot, and that plaintiff had not done so, &c. On these, with several other pleas, issues had been joined.

*G. M. Wharton*, for plaintiff in error.—The question is simply whether the act of 1803, s. 29,(a) renders the insurance void.

The object of that act was to raise a fund for decayed pilots and their families, not to prohibit masters acting as their own pilots, if they pay half-pilotage. This is a tax, not a penalty, nor was it designed to operate as a prohibition. If, then, the sailing without a pilot, though the master be competent to act as such, avoids the policy, it must be either because the legislature created a statutory seaworthiness, or rendered such a voyage illegal. It can hardly be said that the first of these was designed, when the same section authorizes the voyage, if a pilot cannot be obtained after a delay of twenty-four hours. A vessel cannot be rendered seaworthy by the mere delay of twenty-four hours.

The plea, moreover, is confined in its averments to pilots, taken under the laws of Pennsylvania. But this is a matter within the powers of Congress, and they have legislated: Act 1789, 1 Story, 33; 1837, 4 Story, 2536; and there is no denial that a pilot was taken under those laws. The construction of the Pennsylvania act is shown by the acts of 1817, p. 109; 1832, p. 620; 1846, p. 508, to have been confined to its own pilots, and that a statutory seaworthiness was not contemplated, since a certain class of vessels are exempted. The act was probably taken

---

(a) "That every ship or vessel arriving from, or bound to any port or place, and every ship or vessel of the burden of seventy-five tons or more, sailing from or bound to any *part* (port) not within the river Delaware, shall be obliged to receive a pilot." The act then provides that the master shall report to the wardens on his arrival, and imposes a penalty of $60 for neglect; "and if the master of any ship or vessel shall refuse or neglect to take a pilot, the master, owner, or consignee of such vessel shall forfeit and pay to the wardens aforesaid a sum equal to half-pilotage of such ship or vessel to the use of the society, for the relief of distressed or decayed pilots, their widows and children, to be recovered in the manner hereinafter directed :. *Provided*, always, That where it shall appear to the wardens that in case of an inward-bound vessel a pilot did not offer before she had reached Reedy Island, or in case of an outward-bound vessel that a pilot could not be obtained for twenty-four hours after such vessel was ready to depart, the penalty aforesaid for not having a pilot shall not be incurred."

This act constitutes a board of wardens, directs the licensing of pilots, and the amount of their remuneration, and imposes a penalty for every vessel brought to the port of Philadelphia by any person acting as a pilot in Delaware Bay without a license.

from the stat. 5 Geo. 2, c. 20. But this system has been altered: Hugh. on Ins. 260. This is, moreover, a time-policy, the risk beginning at its date: 9 Mass. Rep. 85; 1 Phil. on Ins. 437; and the subsequent neglect to take a pilot was but negligence in the master, which is no defence : American Insurance Company v. Insley, antè, 223; nor is it averred that we did not wait the twenty-four hours. [Per Curiam.—You have not replied that.] It is only when a pilot is necessary that one is required to make a vessel seaworthy : 2 Greenl. Ev. 323. And it seems settled that the not taking one is but negligence, and not barratry, and the risk is covered: Treadwell v. Union Insurance Company, 6 Cow. 270; Keeler v. Fireman's Insurance, 3 Hill, 250; McLanahan v. Insurance Company, 1 Peters, 170; 2 Barn. & Ad. 383, where it is said to be a question for the discretion of the captain.    •

2. Was the voyage illegal ? There is nothing to show a wilful breach of the act of Assembly : Warren v. Insurance Company, 13 Pick. 518; Armstrong v. Toler, 11 Wheat. 258; Ward v. Wood, 13 Mass. Rep. 539; Atkinson v. Abbott, 11 East, 141; Planshé v. Fletcher, 1 Doug. 251.; Law v. Hollingsworth, 7 Term Rep. 160.

Miller and F. W. Hubbell, contrà.—The ship was unseaworthy, not having a pilot on pilot-ground. The cases cited do not apply, because there the act of negligence was subsequent to the attaching of the risk. But seaworthiness must exist at the commencement of every voyage, although the risk has accrued: Hildyard's Park, 470. That is, the vessel, while under the control of the owner, must be kept seaworthy : Hollingworth v. Brodrick, 7 Ad. & Ell. 40. It is a capacity to contend with the dangers of the sea, and that must be at the commencement of every voyage. The other cases are where there was no establishment for pilots. Dixon v. Sadler, 5 M. and Wels. 415, puts a pilot on the footing of necessary stores. To the same effect are 2 B. & Adol. 380; 3 Serg. & Rawle, 508; 2 Boulay Paty, 24; 3 Pardessus, 66. That this is pilot-ground is shown from the acts of Assembly; and these acts are wrought into the commercial law on this question : New Lib. Law and Eq. 64.

2. The voyage was illegal by the breach of a municipal law, and that avoids the insurance : 1 Story, 109; 1 Duer on Ins. 318, 319; 2 Camp. 147; Mitchell v. Smith, 1 Binn. 110; 10 Law Rep. 354; 10 Bing. 107; 1 Barn. & Ad. 266; 7 Term Rep. 186. The case in 3 Hill, 250, turned on the fact that the law was not a penal one, nor to carry out public policy.

This case involves the safety of the pilot establishment, protected by a statute strictly penal. It has been said the exceptions are not denied in the plea; this is disposed of by 2 Ad. & Ell. 312.

As to the supposed pilots licensed under laws of other states, they are not shown to exist, nor have the statutes been pleaded. They cannot, therefore, be judicially known to this court.

*Meredith*, in reply.—It is a strong ground that not a case can be found declaring this a ground of forfeiture. The act, so far as it speaks of pilots, or those exercising the occupation of pilots, clearly refers to those acting for the public, and not to a master in his own vessel. That this practice has been customary, we are prepared to prove under the proper plea, and it is in accordance with the law-merchant: 1 Emerig. Tr. Ass. 402: but the question now raised is whether all insurances grounded on that custom are void. The act of Congress is of course to be judicially recognised, and of consequence so must the legislation of the adjoining states incorporated therein. These are found in acts of N. J. 1837; Dig. Del. Law, 434. The present plea is equally good, whether we had a New Jersey or Delaware pilot, or none at all. And can it be that Pennsylvania can compel the employment of her own pilots only on the Delaware? And if they had averred we had no such pilot, the plea would have been bad, because nowhere is a penalty affixed for not taking such a pilot. The argument that a statutory seaworthiness was intended, seems then sufficiently disposed of.

2. The question of a forfeiture by the breach of such a regulation, is the other ground. This rule has been confused by writers not attending to the distinctions of the cases. The case of vessels carrying contraband of war, are instanced—the warranty of free goods is the ground of defence. Farmer *v.* Legg, 7 Term Rep. 186, is another. But that was the act of parliament, prohibiting policies on such a cargo. Another class are where the forfeiture preceded the commencement of the voyage; but there the owner's interest had vested in the crown. In Law *v.* Hollingsworth, 7 Term Rep. 160, the court refused to decide this to be the effect of the act of parliament, but put the case on the usage of the port. Phillips *v.* Headlam, 2 B. & Ad. 383, is on the same point. What is the illegality which avoids the contract? Either where the consideration of the promise was illegal, or where the thing to be done was so. Here there is a mere omission by a servant, in the course of doing a legal act. This principle is applied to our usury law; it does not avoid the contract, because that is collateral to the unlawful purpose.

Another set of cases are where the consequences of an unlawful act are insured against, the obvious effect of which would be to avoid the intended punishment. How could this rule be applied to marriages prohibited under a penalty, or of a carriage hired at a place where it was subject to a fine ? In all these cases the contract is valid, but there is a collateral penalty annexed. This is not one of the subjects of a great national policy, as is shown by Congress leaving the legislation to the respective states. If, then, there is no illegality in the contract sued on, nor any warranty violated, nor an infringement of a great national policy, none of the cases apply. The case in 3 Hill, 250, in effect decides this, by giving effect to an exception in the policy. Clearly, if the violation of the law be the ground, no agreement can be effective.

*Feb.* 5. ROGERS, J. (after stating the pleadings.)—In support of the judgment it is necessary to show that the act of the 29th March, 1803, on which the question turns, is imperative, that every ship or vessel arriving from or bound to any foreign port or place, and every ship or vessel of the burden of seventy-five tons, or more, sailing from or bound to any port not within the river Delaware, shall be *obliged* to receive a pilot; that the part of the 29th section which provides that when the master of the vessel shall refuse or neglect to take a pilot, the master, owner, or consignee, shall forfeit and pay to the warden, a sum equal to half pilotage, to the use of the society for the relief of distressed and decayed pilots, their widows and children, operates as a *penalty*, intended for no other object than to enforce the employment of pilots on the navigation of the bay and river. In this view of the act, it is contended that a statutory seaworthiness *is created*, and secondly, that an omission to comply with the act, in this respect, renders the voyage illegal, and consequently, on both grounds the policy is avoided. The learned judge repudiates the latter, and bases his opinion on the first ground. The objections to the plea are twofold; one as to the form, the other goes to the substance. The plea is drawn with an eye to the legislation of this state, the act of 1803, which undoubtedly proceeds on the supposition that they had the exclusive control over every question pertaining to the navigation of the bay and river Delaware. It refers alone to pilots licensed by the authority of this state. And in this view of the case, no doubt the plea is good. But this is a pretension founded in error, and is subsequently corrected by the act of Congress, of the 3d of March, 1837, (4 Story's Laws, 2536,) which provides that it

shall and may be lawful for the master or commander of any vessel coming into or going out of any port situate upon waters which are the boundaries between two states, to employ any pilot duly licensed or authorized by the laws of either of the states bounded on the said waters, to pilot said vessel to and from said port, any law, usage, or custom to the contrary, notwithstanding. That the subject of pilotage in bays and rivers bounded by two states is within the constitutional power of the federal government, cannot, I think, admit of doubt. In this view, therefore, of the act of Congress, the plea would be bad, as undoubtedly, if the fact was that the vessel received a pilot from either of those states which bound the waters of the Delaware, no penalty can be inflicted under the laws of Pennsylvania. What, then, is the effect of the act of Congress? Does it repeal the act, or does it excuse its violation, as the court supposes, in a single case? Can this court judicially take notice that there are any laws upon the subject in the states of New Jersey and Delaware? Is it true that the plaintiff is bound to set up this excuse, if, in point of fact, he can maintain such a plea? As a general principle, I freely admit that the laws, even of a sister state, must be proved as facts, and that we cannot judicially take notice of their existence; but I am strongly inclined to the opinion that the rule is not applicable to this case. We judicially know that the waters of the Delaware river and bay are bounded at least by three states.

We also know that the Congress of the United States have legislated on this subject, and have, in effect, incorporated into their act, (the act of the 2d March, 1837,) the regulations of the states of Pennsylvania, New Jersey, and Delaware. It is understood that the act of Congress grew out of a dispute between the states of New York and New Jersey, as to the employment of pilots, the former asserting a right to prescribe that none but pilots licensed by their law should be employed in navigating vessels bound to their port. I am at a loss for a reason why we are not bound to notice the acts of the respective legislatures in the same manner as if incorporated, *verbatim et literatim*, into the body of the act. Under the act of Congress, they form parts of one system, incongruous, it may be, in some of its enactments, but perhaps not more so than we sometimes find in acts of the legislature, confessedly local, and confined exclusively to the bounds of the state. If this view of the case be correct, the plea is bad, because the pleader should have averred that the vessel sailed on her voyage without having a pilot, &c., in accordance with the act of Congress, and the

acts of Assembly of the several states of Pennsylvania, New Jersey, and Delaware. But this is a matter relating to the form of pleading, and touches the principal point only so far as it sheds some light on the principal question. It enables us to decide whether it was the intention of the respective legislatures to make it imperative on the owner of the ship or vessel, in the cases specified, to employ a pilot. The main question is, is it absolutely enjoined, under a penalty, or has the owner the choice of employing a pilot, or paying half-pilotage, when he deems one unnecessary, the master of the vessel being selected for his skill, and fully competent, in his judgment, to navigate the waters of the bay and river. The question thus presented is one of some interest to the commerce of this port. The act, it is true, in its terms, seems to justify the position assumed by the learned judge, for in the 29th section of the act of 1803, on which his decision is based, the legislature say, that every ship or vessel, &c., shall be *obliged* to receive a pilot; and in the subsequent part of the same section, they speak of half-pilotage as a penalty. But in the construction of this act, we must avoid laying too much stress on particular expressions. An eye must be had to the general intent, as evinced in its whole tenor. If we give the section a literal construction, every vessel above the burden of seventy-five tons is obliged to employ a pilot, even when trading between the city of Philadelphia and any port within the Capes, on the Delaware Bay. But this surely never entered into the contemplation of the legislature, as it would put an end to business in vessels of that description, of which a great number are constantly employed, very much to the advantage of this domestic and gainful commerce. It is very evident, from a glance at the act, which is too long to be noticed in detail, connected with the knowledge we have of its history, and subsequent legislation, there has been a conflict of interests between the owners of ships and vessels employed in the foreign and coasting trade, and particularly the latter, on this subject, one contending for, and the other against, the compulsory employment of pilots in the navigation of these waters. This difference has resulted in a compromise. The legislature have wisely decided not to *compel* the owners to employ one, but have permitted them, if they please, to compound by paying half-pilotage, for the benevolent and beneficial purpose of relieving distressed and decayed pilots, their widows and children. The act sets out an inducement to avail themselves of their services, but does not compel them to do so. This construction of the act is reasonable and just. The legislature had two objects in view. the encouragement of that

meritorious and patriotic class of men, by employment in their profession, and when that cannot be accomplished, by providing a fund, at the expense of the owners, for the support of themselves, their widows and families, when, either from age or disease, they may need assistance. It is just as to the owners, whose interest it is to encourage a race of men surrounded by peril and hardship, and who contribute so much to the security of life and property, in the intricate navigation of our waters. But while this object is kept steadily in view, care has been taken not to throw too great a burden on the owners, which would certainly be the result of compelling them to employ a pilot, and of course pay full pilotage, even when the master of the vessel may have equal, if not greater skill than those whom they may be obliged to employ, many of them being selected because of their intimate knowledge of the navigation. It will add much to the expense, from the fact of the frequent voyages they make in the prosecution of the trade; and this should be avoided, as it is well known that so much of the prosperity of the city is owing to the coasting trade, that it may be safely asserted, that to cripple it with an onerous tax, would be aiming a deadly blow at the commerce of the port, alike injurious to the pilots themselves, and the great and increasing trade of our citizens. And thus it stands on our own act; but those suggestions are given additional force when taken in connection with the statutes of our sister state. The Delaware act, which is copied in part from the Pennsylvania statute, was plainly intended, as its title imports, not for the purpose of creating a statutory seaworthiness of the vessel, which never entered into the minds of the legislators, but for the relief of distressed and decayed pilots, their widows and children. Although in substance nearly the same as the act of 1803, yet in connection with the title to the bill, which is entitled to some weight, I cannot view it as indicating any other intention than to leave it optional with the owner. But the statute of New Jersey is still less equivocal. The act of the 8th February, 1837, sect. 18, enacts, that if any master of a vessel, *except schooners and sloops employed in the coasting trade,* licensed for that purpose, and not making the usual signal for a pilot, coming into the ports of Jersey City, Newark, and Perth Amboy, or *into any of the waters of New Jersey,* shall refuse to receive on board and employ a pilot, who shall have offered to go on board, and to take charge of the pilotage of such vessel, the master, owner, or consignee of such vessel shall pay to the pilot half-pilotage, from the place at which such pilot shall have offered himself, to the port of destination. It will be observed, that

from a coasting vessel, neither full nor half-pilotage can be collected, unless with the consent of the master of the vessel, indicated by his making the usual signal for a pilot. And further, there is not the slightest intimation that a pilot must be employed in every case. The master is left free to do so or not, upon paying to the person offering himself as a pilot, half-pilotage, differing, as to the recipients, from the acts of Pennsylvania and Delaware. Taking, then, all the acts as *in pari materia*, which, since the passage of the act of Congress, we deem ourselves bound to do, we have come to the conclusion that there is nothing in the statutes which makes it obligatory on the owner or master of a vessel, whether engaged in the foreign or coasting trade, to employ a pilot.

This proposition being thus established, there is an end of the argument, based, as it is, on the supposition that the act is imperative. The argument is founded on the hypothesis that there is a statutory seaworthiness prescribed; that, failing or omitting to comply with the provisions of the act is a breach of an implied warranty in the policy which awards it. And further, that there is a penalty imposed which renders the voyage illegal. It must be observed that there are other issues on which the case must ultimately depend. It is not my intention to deny that it is part of the implied warranty of seaworthiness that there shall be on board the vessel, at the time the risk commences, not only a sufficient crew and a master of competent skill and ability to navigate her; but, if she sails from a port where there is an establishment of pilots, and the nature of the navigation requires one, that the master should take a pilot on board: Phillips *v.* Headlam, 2 Barn. & Ad. 390. This, as a general proposition, is true, with some explanation. It is not necessary in all cases to take a pilot without regard to the burden of the vessel or the nature of the trade. In 1 Emerigon, p. 402, it is laid down that a captain, who knows the place to which he is bound, is not obliged to employ a coast pilot. These matters must be regulated by the custom of the port, and hence the necessity of inquiring into the custom, which can be done only through the medium of a jury. Is it customary, or necessary, for a vessel engaged in the coasting trade, of the burden of the one in question, to take a pilot, when the master, in the opinion of the owner, has competent skill to conduct her to the ocean? That the river and bay of the Delaware is pilot ground for all vessels engaged in the foreign or coasting trade, is most true; but it is made so, not by force of the act of 1803, but by

the usage of the trade or port. It is coeval with the settlement of the province, or, at any rate, existed, and was judicially known long before the passage of the act in question. That the usage may be modified by statute, may be conceded, but not to the extent of creating a statutory seaworthiness. That a policy may be affected by the provisions of the statute, cannot be denied; but this ought to be admitted with great caution. It is a matter in which all nations, foreign and domestic, are interested. The custom of the port may be known to foreigners engaged in trade; but it is difficult for them to know our complicated regulations by statute. A statutory seaworthiness may give rise to impediments in the way of friendly intercourse, the effect of which may be injurious to commerce.

Judgment reversed, and judgment for plaintiff on the demurrer and *remittitur*, with directions for a *venire* to try the issues, assess the damages, &c., as in the form, *antè,* p. 220.